RANDALL TODD THOMPSON
MAIR, MAIR, SPADE & THOMPSON
238 A.F.C. Flores Street
Suite 801, Pacific News Building
Hagåtña, Guam 96910
Telephone: (671) 472-2089
Telefax: (671) 477-5206

ROBERT J. O'CONNOR
O'CONNOR BERMAN DOTTS & BANES
2nd Floor, Nauru Building, Susupe
P.O. Box 501969,
Saipan, MP 96950-1969
Telephone: (670) 234-5684
Telefax: (670) 234-5683

Attorneys for Defendant/Third-Party Plaintiff
Winzler & Kelly Consulting Engineers



FILED
DISTRICT COURT OF GUAM
MAR 3 1 2006
MARY L.M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF GUAM

| | |
|---|---|
| HUN SANG LEE, <br><br> Plaintiff, <br><br> v. <br><br> MANHATTAN GUAM, INC. dba ROYAL ORCHID HOTEL, ANTHONY ROBINS AND ASSOCIATES, O.A. COLOMA, P.C., PHOENIX UNITED CORP., LTD., WINZLER & KELLY CONSULTING ENGINEERS, and DOE DEFENDANTS One through Ten, <br><br> Defendants. | CIVIL CASE NO.: CIV04-00027 <br><br> DECLARATION OF HAROLD DEAN GILLHAM IN SUPPORT OF DEFENDANT/THIRD-PARTY PLAINTIFF WINZLER & KELLY CONSULTING ENGINEERS' MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF SERVICE |
| MANHATTAN GUAM, INC. dba ROYAL ORCHID HOTEL, <br><br> Cross-Claimant, <br><br> v. <br><br> ANTHONY ROBINS AND ASSOCIATES, O.A. COLOMA, P.C., PHOENIX UNITED CORP., LTD., WINZLER & KELLY CONSULTING ENGINEERS, <br><br> Cross-Defendants. | |

**ORIGINAL**

| | |
|---|---|
| WINZLER & KELLY CONSULTING ENGINEERS, | )<br>)<br>) |
| Third-Party Plaintiff, | )<br>) |
| v. | )<br>) |
| VSL PRESTRESSING (GUAM), INC. | )<br>) |
| Third-Party Defendant. | )<br>) |
| ANTHONY ROBINS AND ASSOCIATES, | )<br>) |
| Cross-Claimant, | )<br>) |
| v. | )<br>) |
| MANHATTAN GUAM, INC. dba ROYAL ORCHID HOTEL, | )<br>)<br>) |
| Cross-Defendant. | )<br>) |

I, Harold Dean Gillham, hereby declare that I am over the age of 21, and competent to testify to the following, which is based upon my personal knowledge and professional experience on Guam.

1. Attached here as Exhibit "62" is my curriculum vitae. Attached hereto as Exhibit "63" is a listing of my prior testimony as an expert in various cases.[1]

2. I am a licensed structural engineer and civil engineer. I have been a licensed Civil Engineer in the State of California since 1964. I have been licensed on Guam as a structural engineer since 1974. I have been licensed on Guam as a civil engineer since 1966. I am a past President of the Guam Society of Professional Engineers as well as the Guam Society of American Military Engineers.

3. As a structural engineer, I have participated in the structural design work for many of the larger hotel complexes on Guam, including the following:

>  Leo Palace Resort
>  Dai-Ichi Hotel
>  Hilton Hotel
>  Hotel Nikko
>  Onward Agana Beach Hotel

---

[1] Using the same exhibit numbering system as employed for my deposition and the depositions of other witnesses in this case.

Palace Hotel
Marriott Hotel
Miyama Hills Hotel
Fujita Hotel
Tumon Holiday Manor
Pacific Islands Club's Phase I, II, III and IV.

4. My firm, GK2, provided contract administration and inspection, including special inspection, for these facilities.

5. The purpose of this declaration is to illustrate the development process involved in the design, construction and inspection of facilities on Guam, and also to address the duties and responsibilities of various disciplines associated with the design, construction and inspection of buildings on Guam, including swimming pools, and to present my professional opinion of the scope of duties and responsibilities of Winzler & Kelly Consulting Engineers ("Winzler & Kelly") with respect to the design, inspection and construction of the swimming pool for the Royal Orchid Hotel on Guam. The following discussion and opinions are based on my personal experience relative to industry standards and professional practice on Guam.

6. I have reviewed the contract agreements between Winzler & Kelly and Manhattan Guam, Inc. (Exhibits "13", "14", 15" and "16"). I have reviewed Winzler & Kelly's Final Inspection Report dated September 1, 1998 (Exhibit "18") and the various Exhibits "1" through "67" referred to in the various depositions taken in this case. I have personally inspected the Royal Orchid swimming pool, and I have reviewed Winzler & Kelly's structural drawings, including the structural support system for the pool.

<u>Division of Design and Inspection Responsibility for a Construction Project</u>

7. Building designs typically require the services of at least 5 distinct and separate design and inspection disciplines.

    a) Architect.
    b) Structural Engineer.
    c) Civil Engineer.
    d) Electrical Engineer.
    e) Mechanical Engineer.

Several other disciplines may be involved in building designs, such as acoustical engineer, interior designer, pool consultant, etc. Although the various disciplines must be coordinated, the duties and responsibilities of each discipline remain separate and distinct.

8. Typically, the Architect prepares concept drawings that address the size, shape and details of the building and appurtenances (swimming pools e.g.) and is responsible for selecting finishes and colors. With respect to safety issues:

   a) The Architect is responsible for ensuring room dimensions, corridors, hand rails, building egress, number and location of exits meet code, and the Architect or Pool Consultant is responsible for ensuring swimming pool depths, steps, colors and signage to meet applicable codes and local rules and regulations.

   b) The Structural Engineer is responsible for ensuring the structural system meets all applicable codes for dead loads (weight of building, weight of swimming pool and swimming pool contents e.g.), code specified floor live loads, roof live load, wind loads and seismic induced inertial forces on the building.

   c) The electrical engineer is responsible for ensuring the electrical system meets all applicable electrical codes.

   d) The Mechanical Engineer is responsible for ensuring the plumbing system and HVAC (Heating Ventilating and Air Conditioning) systems meet applicable codes.

   e) The Civil Engineer is responsible for ensuring the exterior drainage system and sewer system meets all applicable codes and local ordinances. (No further discussion on the subject of Civil Engineering is included in this declaration since it is not germane to the subject of this lawsuit.)

9. With respect to inspection, each professional inspects his/her work, i.e.

   - The Architect inspects architectural elements such as floor finishes, wall finishes, swimming pool ingress and egress elements (stairs e.g.), colors and signage.

   - The Structural Engineer inspects structural elements (size of structural elements, placement of reinforcing and placement and quality of concrete).

   - The Electrical Engineer inspects the installation of conduit, panel boards, electrical fixtures, etc.

   - The mechanical Engineer inspects the construction of the plumbing systems and HVAC systems.

4

10. The duties and responsibilities of each discipline are separate and distinct, for a number of reasons:

1) Typically, each discipline professional possesses knowledge and experience in his/her particular discipline, and not the other disciplines. For example, the Electrical Engineer is not an expert in structural design and the Structural Engineer is not an expert in electrical design, therefore the intrusion of the Structural Engineer on the domain of the Electrical Engineer or the Architect (and vice versa) could spell disaster for the project.

2) Duplication of duties and responsibility would result in complete chaos.

   a) If the duties of the Architect, Electrical Engineer, Mechanical Engineer and Structural Engineer all encompass structural engineering, whose opinion prevails during the design process? The Architect? The Electrical Engineer? The Mechanical Engineer? The Structural Engineer? Similarly, if all of the disciplines are responsible for ensuring the pool stairs, for instance, meet code (the domain of the Architect or Pool Consultant ), whose opinion prevails during the design process? The Architect? The Electrical Engineer? The Mechanical Engineer? The Structural Engineer?

   b) If the Architect, Electrical Engineer, Mechanical Engineer and Structural Engineer are all responsible for the electrical design and the building is damaged by fire due to faulty electrical design, from whom does the Owner seek redress? The Architect? The Electrical Engineer? The Mechanical Engineer? The Structural Engineer?

   c) Item b) above also applies to inspection. If the building were damaged by fire due to faulty electrical installation, from whom does the Owner seek redress? The Contractor? The Architect? The Electrical Engineer? The Mechanical Engineer? The Structural Engineer?

   d) Duplication of duties and responsibilities would place all of the disciplines in untenable positions. No sane Structural Engineer would accept an assignment that saddled the Structural Engineer with the duties and responsibilities of the Architect, the Electrical Engineer and/or the Mechanical Engineer, just as no sane Electrical Engineer would accept an assignment that saddled

5

him/her with the duties and responsibilities of any or all of the other disciplines. If the courts were to find each discipline were responsible for the actions of all other disciplines, I assure you Architectural/Engineering (A/E) design professionals would soon be included in the Endangered Species List as design professionals simply could not afford to accept such an onerous assignment.

11. With respect to the subject lawsuit, the swimming pool design would normally encompass four or more major disciplines:

    a) The Architect or Pool Consultant determines the size, depth, ingress and egress elements (steps e.g.), color scheme and signage, and provides inspection during construction;

    b) The Mechanical Engineer designs and inspects the mechanical elements (pump, piping, etc.);

    c) The Electrical Engineer designs and inspects the power supply for the mechanical equipment and lights;

    d) The Structural Engineer designs and inspects the support system for the swimming pool, (the columns, beams, underlying concrete slab, etc.), in order to ensure the primary structural system has the capacity necessary to support the weight of the pool and contents.

Each professional has the authority and responsibility to make decisions with respect to both the design and the construction quality for his/her particular discipline, but has neither authority nor responsibility with respect to the other disciplines.

### Winzler & Kelly's Structural Design Work

12. The ordinary sequence of events on Guam with respect to the design of a building is as follows:

- **Step 1.** The Owner establishes his requirements from an operational viewpoint.

- **Step 2.** In consultation with, and the approval of, the Owner, the Architect translates the Owner's operational requirements into Architectural drawings.

- **Step 3.** The Architectural drawings are transmitted to the various engineering disciplines (Civil Engineer, Electrical Engineer, Mechanical Engineer & Structural Engineer) for design purposes.

6

- **Step 4**. The Structural Engineer uses the architectural drawings for structural design purposes, and typically uses an electronic copy of the Architect's CAD drawings as backgrounds for the structural design drawings for facilitation (i.e. the Structural Engineer does not have to start from scratch in the preparation of backgrounds for the structural drawings), but more importantly to ensure the structural drawings match the architectural drawings, as the architectural plans control the building layout, dimensions and architectural features such as swimming pools, and the Structural Engineer depends on the Architect for these data for structural design purposes.

Subsequent steps include the submission of design plans to the Department of Public Works for issuance of a building permit (the "permit plans"), revisions to the design plans and the preparation of "structural shop drawings" by the contractor. The "structural shop drawings", which are more detailed than the permit plans and design plans, are edited and approved by the structural engineer, and are used by the contractor for construction purposes and are also used by the special inspector and the Department of Public Works for inspection purposes. The permit plans, design plans and structural shop drawings constitute the "approved drawings".

13. The fact that an architectural feature, such as a pool, may appear in a structural drawing does not mean that the Structural Engineer had any role in designing the architectural features of the pool, such as the pool shape, step location and step geometry, colors, signage and markings.

14. When a Structural Engineer is retained to design the "structural system" (or "structural elements") of a building, this is generally understood on Guam to mean the primary load-bearing, force-resisting parts of the building, such as the floors, walls, columns and beams, which support the weight of the building and resist lateral forces such as wind and seismic forces.

15. A swimming pool can involve some isolated structural issues of its own (e.g., the capacity of the pool walls to withstand the hydrostatic pressure of the water inside the pool), but would be considered a secondary structural element. The judgment criteria for classification of structural elements as either primary or secondary is relatively simple and straightforward: **Would the elimination of the element adversely affect the structural stability of the building?** For example, the elimination of a column would indeed *adversely affect the structural stability of the building,* as without the column, collapse of the building is probable, therefore the column is a primary structural element. In the case of the Royal Orchid swimming pool, the elimination of the swimming pool would not *adversely affect the structural stability of the building.* Remove the swimming pool and the building remains intact, with no adverse structural effects on the structural system. The document "National Practice Guidelines for the Structural Engineer of Record," published by the Council of American Structural Engineers (CASE) states: *"The allocation of responsibility for any*

*Secondary structural and Non-structural Elements should be discussed with the prime or coordinating design professional and, where appropriate, included in the SER's Contract as a special service. If the SER has no contractual obligation or design control for an element, then responsibility logically rests with the prime or coordinating design professional."* This criterion, coupled with the fact that the Royal Orchid swimming pool is a secondary structural element, clearly indicates that Winzler and Kelly had no responsibility for the Royal Orchid swimming pool design, except to ensure the primary structural system could support the swimming pool and contents. Moreover, The phrase **"the completed structure"** in Exhibit 18 (Winzler & Kelly's Final Report) clearly indicates the construction of the primary structural system had been completed as of September 1, 1998. Thus, as of September 1, 1998, Winzler and Kelly had fully discharged its structural design and structural inspection obligations to Manhattan Guam, and the pool had yet to be designed, and was still not designed almost a year later.

16. The presence or absence of steps in a swimming pool is not an issue that would materially affect a structural engineer's calculations regarding the capacity of the building's structural system to support the weight of the pool and its contents, since the weight of any steps would be negligible in comparison with the weight of the pool walls, slab and water. In performing the structural analysis of the building and designing its structural system, Winzler & Kelly calculated that the total weight of the concrete pool and contents to be 730,000 pounds. The weight of the pool steps concrete estimated by Mr. Moeller in his report is between 3,000 to 5,000 pounds (and, once submerged, their weight would be even less (c. 1750 lbs. to 2920 lbs.)). The placement or non-placement of concrete steps would thus increase or decrease the total weight by less than one-half of one percent. Structural Engineers do not know the actual weight of a concrete building within 1/2%. As an example, a 1/4 inch deviation in a 6 inch concrete slab (not uncommon) equates to a 4% increase or decrease in weight. In addition, Structural Engineers always round off **up** when computing reinforcing requirements. For example, if 4.5 strands were required, the structural engineer would not specify 4.5 strands, he/she would specify 5 strands and the beam would have 10% more strength than required by code.

17. The placement of pool steps (e.g., recessed or non-recessed) and their color are not structural issues. I have been designing buildings with swimming pools on Guam for the past four decades, but until this issue arose I was completely unaware of any local ordinance addressing swimming pool steps, colors or signage. My ignorance of these design elements stems from the fact that, as a Structural and Civil Engineer, I have never been involved in the conceptual design (i.e. size, steps, colors, signage, etc.) of swimming pools. My duties and responsibilities have been limited to ensuring the swimming pools have adequate structural support and can withstand the hydrostatic pressures created by the pool contents.

8

## Winzler & Kelly's Special Inspection

18. The 1994 Uniform Building Code, the official building code for Guam at the time of the design and construction of the Royal Orchid Hotel, is divided into three volumes:

<u>Volume 1</u> addresses architectural requirements for various occupancies (Retail, Educational, Residential, etc. Residential includes hotels).

<u>Volume 2</u> (titled "Structural Engineering Design Provision") includes Chapters 16 through 23, which address structural requirements only.

<u>Volume 3</u> addresses material, testing and installation standards.

Special inspection is addressed in Chapter 17 (titled "Structural Tests and Inspections") and is related to the inspection of the construction and installation of structural materials only. It is not related to special inspection of electrical elements, mechanical elements, plumbing elements or architectural elements. Thus, when a Structural Engineer is commissioned to provide "inspection, observance or special inspection" it is explicitly understood that the Structural Engineer will be inspecting <u>structural elements</u>, not electrical equipment, not mechanical equipment, not plumbing systems and not architectural elements associated with swimming pools or any other part of the building, as, unless the structural engineer is also a registered electrical engineer, registered mechanical engineer, and registered architect, he/she is not qualified to either design, inspect or supervise inspection of the electrical elements, mechanical elements and architectural elements of the building and/or the swimming pool.

19. In performing §1701 special inspections, or any other structural design inspections, Winzler & Kelly would not be responsible for ensuring the Royal Orchid Hotel was built in accordance with any approved plans or drawings -- even structural drawings -- other than the structural drawings that Winzler & Kelly themselves had prepared, unless Winzler and Kelly had explicitly agree otherwise. On Guam, the Structural Engineer of Record (SER) typically provides special inspection (when required) for the work performed by the SER, but does not provide inspection for the structural design work performed by other engineers unless the SER has explicitly agreed with the client to do so. Since the engineer for any particular structural element is more familiar with the design intent than is an engineer not involved in the design, it is logical that the engineer who designed the structural element also provide the inspection. Since Winzler & Kelly was not involved in the structural design of the pool proper (i.e., the pool steps, and the walls and floor of the pool itself, as opposed to the supporting platform and beams underneath), Winzler & Kelly had no responsibility or

obligation as the structural or civil engineers or special inspectors to provide any inspection of the swimming pool.

20. The scope of Winzler & Kelly's responsibility was also limited by its proposal, which was to inspect for only the types of work listed in the first four subsections of §1701 (the sections highlighted with a clouded line in Exhibit "16"). Winzler and Kelly was therefore not responsible for inspecting excluded items such as the installation of shotcrete or gunite.

21. Even if Winzler & Kelly's structural inspectors had inspected the concrete and reinforcing steel for the pool, their duties and responsibilities would be limited to only those aspects of the pool related to its structural integrity. These structural inspectors would have no duties related to the shape of the pool, the configuration of the pool steps, the paint colors or signage.

22. On Guam, the special inspector is not expected to assure that all relevant codes and ordinances are being observed. That is the responsibility of the various design professionals. The special inspector's job is to observe and report whether or not the contractor is constructing the building structural system in accordance with the approved structural shop drawings.

23. The practice of structural engineering does not include the determination of requirements for depth markers on swimming pools, therefore Winzler & Kelly had no professional duty of care relative to such depth markers. The practice of structural or civil engineer does not include selecting the colors or configuration of steps for swimming pools and Winzler & Kelly therefore had no professional duty of care relative to the configuration of the pool, the geometry and location of the pool steps, or to the pool colors including the color of the pool steps.

24. Unless Winzler & Kelly were –

a) Specifically obligated (in writing) to provide the conceptual design of the swimming pool, including the design of the steps, color selection and signage,

b) Or Winzler & Kelly certified the pool architectural design (as opposed to certifying the design of the structural elements supporting the pool),

It is my professional opinion that Winzler & Kelly is not responsible for the conceptual design of the swimming pool steps, ladders, color selection and signage, nor is Winzler & Kelly responsible for ensuring the swimming pool ingress and egress elements, color selection and signage meet applicable codes and local ordinances.

10

Case 1:04-cv-00027    Document 104    Filed 03/31/2006    Page 10 of 16

25. Winzler & Kelly was responsible for the structural work performed by, and certified by, Winzler & Kelly, and inspection of the structural elements designed by Winzler and Kelly and listed in Chapter 17 of the 1994 Uniform Building Code, as amended by Winzler & Kelly in their proposal to Manhattan Guam, no more and no less.

26. I am familiar through long personal experience (more than 38 years) with the Guam construction industry standards and practices, and with the standard of care for structural engineers and §1701 inspectors on Guam. Winzler & Kelly's discharge of its contractual duties toward Manhattan Guam, Inc., and all of its work in connection with the Royal Orchid Hotel expansion project, fully complied with these standards. In particular, the Guam standard of care imposed no duty on Winzler & Kelly, in its role as structural designer and/or special inspector, to consider the architectural features of the pool or the pool steps or the color or signage in any way whatsoever, or to be aware of any local rules and regulations relating to the swimming pool. Unless Winzler and Kelly explicitly agree otherwise, Winzler and Kelly had no obligation to design or inspect the pool proper, to design or inspect the pool stairs, to review and/or edit any plans relating to the swimming pool, to observe the pool construction, or to notify anyone regarding the design or construction of the swimming pool.

I swear under penalty of perjury that the foregoing is true and correct.

Signed in Guam, U.S.A., on March 27, 2006.

_____
Harold Dean Gillham

11
Case 1:04-cv-00027   Document 104   Filed 03/31/2006   Page 11 of 16

# CERTIFICATE OF SERVICE

I, **SANDRA E. CRUZ**, hereby certify that I have caused a copy of the **DECLARATION OF HAROLD DEAN GILLHAM IN SUPPORT OF DEFENDANT/THIRD-PARTY PLAINTIFF WINZLER & KELLY CONSULTING ENGINEERS' MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF SERVICE**, to be served upon the following offices as set forth below:

On March 31, 2006, to:

Patrick F. McTernan, Esq.
Cronin, Fried, Sekiya, Kekina & Fairbanks
841 Bishop Street, Suite 600
Honolulu, Hawaii 96813-3962
Telefax: (808) 536-2073

    (by fax)

Jason S. Kim, Esq.
Law Offices of Jason S. Kim
Suite 303, Young's Professional Building
788 N. Marine Drive
Upper Tumon, Guam 96913

    (by personal delivery)

*Attorneys for Plaintiff Hun Sang Lee*

G. Patrick Civille, Esq.
Civille & Tang, PLLC
330 Herman Cortez Avenue, Suite 200
Hagåtña, Guam 96910

    (by personal delivery)

*Attorneys for Defendant, Cross-Claimant and Cross-Defendant*
*Manhattan Guam, Inc. dba Royal Orchid Hotel*

Michael A. Pangelinan, Esq.
Jennifer Calvo-Quitugua, Esq.
Calvo & Clark, LLP
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913

    (by personal delivery)

Michael C. Carrolle, Esq.
Harvey J. Lung, Esq.
Bays, Deaver, Lung, Rose & Baba
1099 Alakea St. 16th Floor
Honolulu, Hawaii 96813
Fax No. (808) 533-4184

    (by fax)

*Attorneys for Defendant, Cross-Defendant and Cross-Claimant Anthony Robins and Associates*

Oscar A. Coloma
O.A. Coloma, P.C.
Suite 35, Paraoceana Business Center
674 Harnon Loop Road
Dededo, Guam 96929

*Pro se*

    (by first class US Mail)

Dated this ___ day of March, 2006.

                              _____
                                  SANDRA E. CRUZ

13

# DEAN GILLHAM

GK2 INC.
P.O. BOX 3207
HAGATNA, GUAM 96932
WORK: (671) 477-9224 / 472-8758 FAX: 477-3456 Email: dg@gk2guam.com

## PERSONAL INFORMATION

Date of Birth:     July 25, 1936
Place of Birth:    Arkansas
Citizenship:       U.S.
Sex:               Male

## PROFESSIONAL BACKGROUND

$GK^2$ Inc. President

## EDUCATION

University of Arkansas, Arkansas, U.S.A

## DEGREES

Bachelor of Science in Engineering, 1960

## HONORS

Recipient of Arkansas Foundry Scholarship (Based on Academic Achievements)
Tau Beta Phi – National Engineer's Honor Society
Chi Epsilon – National Civil Engineer's Honor Society
Phi Theta Kappa – National Junior College Honor Society

## PROFESSIONAL REGISTRATION

| Registered Professional Engineer | (Civil) #14607     | California         |
| Registered Professional Engineer | (Civil) #20        | CNMI               |
| Registered Professional Engineer | (Structural) #21   | CNMI               |
| Registered Professional Engineer | (Civil) #85        | Territory of Guam  |
| Registered Professional Engineer | (Structural) #357  | Territory of Guam  |

## PROFESSIONAL ORGANIZATIONS

Guam Society of Professional Engineers          -Charter Member, Past President
National Society of Professional Engineers
Earthquake Engineering Research Institute
Society of American Military Engineers          -Past President

EXHIBIT 62

## PROFESSIONAL EXPERIENCE

Mr. Dean Gillham has been on CNMI, Guam and Micronesia for the past 40 years, and has extensive experience in the structural design and project management of buildings and related civil work. Dean has been the Chief Engineer and Vice-President of Guam A/E Firms from 1967 to 1970, and assumed the Presidency of GK2 Inc. in 1970.

## TYPICAL STRUCTURAL DESIGN PROJECT MR. GILLHAM HAS BEEN INVOLVED IN INCLUDE:

- Pacific Islands Club Phase I, II, III & IV - Guam *(pool)*
- Pacific Islands Club Phase I, II, III – Saipan *(pool)*
- Leo Palace - Guam
- Dai Ichi Hotel – Guam
- Dai Ichi Hotel Extension – Saipan
- Hilton Hotel – Guam *(pool)*
- Hotel Nikko – Guam *(pool)*
- Sherwood Hotel Seismic Retrofit – Guam
- Onward Agana Beach Hotel - Guam *(pool)*
- Palace Hotel - Guam
- Marriot Hotel - Guam
- Miyama Hills Hotel - Guam
- Fujita Hotel – Guam
- Tropical Plaza - Saipan
- Villa Kanton Tasi – Guam
- Holiday Tower – Guam *(pool)*
- Ladera Tower – Guam
- Tumon Holiday Manor - Guam

June 20, 2005

Prior Testimony

First Industrial Corp. vs. Maeda
Super Court Case Unknown

Sherwood Ltd. vs. Mackinley Winnaker McNiel
American Arbitration Assoc.
Case Number Unknown

Royal Palm Resort Litigation
Super Court Case Unknown



EXHIBIT 63

Street Address: Julale Center Suite 230, 424 W. O'Brien Drive, Hagatna, Guam 96910
Mailing Address: P.O. Box 3207 Hagatna, Guam 96932
(671) 477-9224 / 472-8758 * Fax: (671) 477-3456 * E-Mail: gk2main@gk2guam.com